SAMUEL, Judge.
As a result of two expropriation proceedings instituted against Henry G. Neyrey, Jr. and John R. Neyrey, record owners of the expropriated immovable property located in Jefferson Parish, the Department of Highways deposited in the registry of the trial court the total amount, including interest, determined to be the value of the land taken plus damages.[1] A part of the total deposit, amounting to the sum of $51,710.86, remains in the trial court’s registry. Alleging that sum belonged one-half to Henry G. Neyrey, Jr. and one-half to John R. Neyrey, on June 27, 1972 the latter (John R. Neyrey hereinafter referred to as “relator”), individually and as natural tutor of his minor children, filed a rule to show cause why one-half of the remaining deposit should not be turned over to him. The rule was filed contradictorily against the Clerk of Court.
*148 On July 19, 1972 there was judgment on the rule directing the Clerk of Court to disburse to relator the requested one-half, i. e., the sum of $25,855.43, which the judgment states is “to be disbursed”, in various amounts totaling $25,855.43, to two attorneys, to relator as tutor only and to[1] an alleged assignee, Marvin V. Cavallino. On July 27, 1972 a subsequent judgment was rendered, ex proprio motu, setting aside, annulling and vacating the judgment of July 19, 1972. Both judgments were rendered during the vacation term and the suit, which involves a long, complicated record, was in a division of the trial court other than that presided over by the judge who handed down both judgments. In his reasons for the second judgment he stated: “ . . . the Court now finds that all the facts of the rule to withdraw said funds were not before it and that certain facts have been misrepresented and said judgment was improvidently granted: . . . ”
Relator then applied to this court for 'writs complaining that the trial court was without authority to render the second judgment of July 27, 1972 and seeking reinstatement of the first judgment of July 19, 1972. We granted an alternative Writ of Certio-rari and the matter is now before us on that writ. With our permission amicus curiae briefs have been filed by two individuals and two corporations opposing relator and one individual in support of relator’s position.
Three of the opponents allegedly are creditors of the relator, with judgments and seizures against him and which said judgments were recorded in the Parish of Jefferson. The fourth opponent allegedly is an assignee of all of relator’s interest in this expropriation suit and the record contains a copy of that alleged assignment which was filed in these proceedings on June 9, 1969. The individual who[1] supports relator’s position is Cavallino, the alleged assignee from relator whose interest was recognized in the judgment of July 19, 1972. In addition, we note that one of the corporations opposing relator, Gold-ring’s, Inc., has filed a petition tO‘ annul the judgment of July 19, 1972.
Relator’s primary contention is that the trial judge was without authority to recall and set aside his judgment of July 19, 1972. He also contends that, in view of a compromise entered into by various creditors and a judgment rendered recognizing that compromise, the judgment of July 19, 1972 was correct. We find there is insufficient evidence in the record at this time to justify any conclusion on our part regarding the second contention.
Regarding relator’s primary contention, that the trial judge was without authority to render the second judgment of July 27, 1972 on his own motion and without a contradictory proceeding of any kind, we are now of the opinion that a consideration of that contention is not material tO‘ our conclusion. For we are now satisfied, both by the trial judge’s reasons for annulling and setting aside his July 19, 1972 judgment and by what is revealed by the record itself, that some of the actual facts were unknown to the trial judge, and that there may have been misrepresentations made to him, either or both of which resulted in the first judgment. Thus, an injustice may be done to relator’s creditors if they are not given an opportunity to be heard. Under LSA-C.C.P. Art. 2164, at this stage of the proceedings we do have the authority to prevent such a possible injustice.[2]
We note that we cannot accomplish this purpose if we only annul and set aside the second judgment of July 27, 1972. Such action, alone, would permit disbursement of the remaining deposit under the first judgment of July 19, 1972 and effectively deprive the creditors of an opportunity to be heard.
For the reasons assigned, it is ordered that the alternative Writ of Certiorari *149 fterein issued be made peremptory and, accordingly, the judgment of July 27, 1972 be, and the same is now, annulled and set aside. It is further ordered that all parties be referred to the annulment proceeding instituted herein by Goldring’s, Inc. with all of relator’s creditors being now given the right to intervene in that proceeding. It is further ordered that this matter be remanded to the trial court for the purpose of hearing and deciding the proceeding to annul and thereafter taking whatever action may be proper and necessary. It is further ordered that there be no disbursement of the monies on deposit to relator pending the final disposition of the proceeding to annul. Finally, it is further ordered that all costs await a final disposition.
Writ made peremptory.

. See State of Louisiana, Through the Department of Highways v. Neyrey, Jr., et al., La.App., 240 So.2d 586 and La.App., 260 So.2d 739.

. LSA-C.C.P. Art. 2164 provides we shall render any judgment -which is just, legal and proper upon the record before us.